# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8698 | **DATE** | 7/19/2004 |
| **CASE TITLE** | Minter vs. AAA Cook County Consolidation et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion, plaintiff's motion for summary judgment [16-1] is denied. There is a genuine issue of fact as to defendants' purpose in accessing plaintiff's credit report, precluding a finding on summary judgment as to liability in Count I. Plaintiff's claim for actual damages in Count I is denied. Count II is dismissed with prejudice. Status hearing set for 8/19/04 at 9:00 a.m. At that time, a date for a settlement conference or trial will be set. The trial, if necessary, will be solely as to Count I and will address liability and, if applicable, statutory and punitive damages.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 19 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 33 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK 2004 JUL 19 AM 8:30 | 7/19/2004 date mailed notice | |
| KF | courtroom deputy's initials | Date/time received in central Clerk's Office | KF mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHYLONDA Y. MINTER f/k/a/ SHYLONDA Y. DENNIS, <br><br> Plaintiff, <br><br> v. <br><br> AAA COOK COUNTY CONSOLIDATION, INC. and BEN HOFFMAN, <br><br> Defendants. | No. 02 C 8698 <br><br> Mag. Judge Michael T. Mason |

DOCKETED
JUL 19 2004

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff Yolanda Minter ("Minter") filed a two-count complaint against defendants AAA Cook County Consolidation, Inc. ("AAACCC") and Ben Hoffman ("Hoffman") alleging a violation of The Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* ("FCRA" or "Act") and the common law tort of intrusion upon seclusion. The parties filed cross motions for summary judgement. We denied defendants' motion for summary judgment in open court on March 25, 2004.[1] Now, we address plaintiff's motion for summary judgment. For the following reasons, plaintiff's motion is DENIED and Count II is dismissed with prejudice.

---

[1] We denied defendants' motion for summary judgment because they failed to comply with Northern District of Illinois Local Rule 56.1 for a second time. *See Waldrige v. American Hoeschst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994). At that time, we also ordered defendants to provide a supplemental response to plaintiff's motion for summary judgment and supporting material because defendants' original response failed to address a number of the issues raised therein.

**Background**

The following facts are drawn from parties' Local Rule 56.1 Statements and are undisputed unless otherwise noted. Minter was a customer of AAACCC, a debt consolidation company, from approximately January, 2001 to May, 2001. During that period, Minter and AAACCC entered into an agreement relative to plaintiff's credit obligations. Plaintiff terminated the agreement in May, 2001. Thereafter, on March 27, 2002, plaintiff filed suit against AAACCC in the Circuit Court of Cook County alleging, *inter alia*, damages relating to her previous contractual relationship with AAACCC. *See Dennis v. AAA Cook County Consolidation, Inc.*, No. 02 CH 6207 ("State Case"). Specifically, plaintiff's state complaint alleges, in pertinent part, :

> [Minter] enrolled as a client with [AAACCC] because she wanted to consolidate her credit card bills into one bill with one lump-sum payment to her creditors, in order to avoid late fees and possible harm to her credit rating. [AAACCC] charged [Minter], and [Minter] paid, client account fees. As part of its agreement with [Minter], [AAACCC] promised to pay creditors on a timely basis. However, [AAACCC] failed to pay creditors on a timely basis.

*States Case Complaint* ¶¶ *12-15.*

At the time Minter filed her State Case, she did not have a business relationship with AAACCC. AAACCC was served in the State Case on April 3, 2002. That same day, Hoffman, then president of AAACCC, accessed Minter's credit report from Experian, a credit reporting agency, on behalf of AAACCC. Minter did not provide AAACCC with written consent to access her credit report on April 3, 2002. In his deposition, Hoffman stated that Minter provided him oral consent to access her credit report in a telephone conversation. This fact is disputed. In her affidavit, Minter denied

orally requesting, or consenting to, Hoffman accessing her credit report on April 3, 2002.[2]

### *Legal Analysis*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), *Flores v. Preferred Technical Group*, 182 F.3d 512, 514 (7th Cir.1999). When ruling on a motion for summary judgment, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the non-moving party. *See Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 714 (7th Cir. 1999). The movant bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322-23.

### *Count I - Violation of the FCRA*

*Liability*

Plaintiff argues the evidentiary record shows beyond dispute that defendants violated 15 U.S.C. §1681b because they lacked a permissible purpose to obtain her credit report on April 3, 2002, and they used false pretenses to obtain the report in violation of 15 U.S.C. §1681q. *Pl.'s Memo in Support of Mot. ("Pl.'s Memo")* at 3-4. Defendants disagree, arguing had a permissible purpose for requesting plaintiff's credit

---

[2]This factual dispute, as discussed *infra,* is not material to the outcome of plaintiff's motion for summary judgment.

3

report on April 3, 2002, and, therefore, plaintiff's claim must fail as a matter of law.[3]

A review of the FCRA is the natural starting point for our analysis. The FCRA is a consumer protection statute regulating the actions of both credit reporting agencies and those requesting credit information from them. See 15 U.S.C. §1681b stating :

> [A]ny consumer reporting agency may furnish a consumer report under the following circumstances and *no other* : . . .
>
> (2) In accordance with the written instructions of the consumer to whom it relates.
>
> (3) To a person which it has reason to believe – . . .
>
> (F) otherwise has a legitimate business need for the information –
>   (i) in connection with a business transaction that is initiated by the consumer; or
>   (ii) to review an account to determine whether the consumer continues to meet the terms of the account . . .
>
> 15 U.S.C. §1681b (emphasis added).

Subject to subsection (c) of the section, 1681b(a) provides an exhaustive list of the authorized or permissible purposes for obtaining a consumer credit report. §1681b(f) further provides that "it is unlawful for any person to use or obtain a credit report for an unauthorized purpose." *Castro v. Union Nissan, Inc.*, 2002 WL 1466810 at *3 (N.D. Ill. July 8, 2002). Therefore, if plaintiff can show, through the undisputed facts in the evidentiary record, that defendants did not access her credit report on April 3, 2002 under one of the circumstances outlined above, defendants have violated §1681b(f) and plaintiff is entitled to judgment in her favor as a matter of law. Conversely, if

---

[3]Although we previously denied defendants' motion for summary judgment for failure to comply with Local Rule 56.1, for completeness we address the substantive arguments contained therein.

4

defendants had a permissible purpose for accessing plaintiff's credit report under the Act, then they necessarily did not access it under false pretenses.[4] *Pappas v. City of Calumet*, 9 F.Supp.2d 943, 949 (N.D.Ill 1998); *Allen v. Kirkland & Ellis*, 1992 WL 206285 at *2 (N.D.Ill. Aug. 17, 1992).

Before we can determine whether defendants' purpose in accessing plaintiff's credit report was "permissible", we must first identify their purpose. Without a citation to the record, plaintiff argues that defendant Hoffman accessed her credit report on behalf of AAACCC for the purpose of "trying to help a former client," or based on plaintiff's alleged oral consent. *Pl.'s Memo* at 4. Also without a citation to the record, defendants disagree, arguing that they accessed plaintiff's credit report in connection with the defense of plaintiff's State Case against them.

After reviewing the evidentiary record before us, we find a factual dispute as to defendants' purpose in accessing Minter's credit report on April 3, 2002. Plaintiff cites to pages 136-37 of Hoffman's deposition, which contain the following questions from plaintiff's attorney and answers from Hoffman:

Q. Only one phone call between you and Ms. Dennis?
A. I believe that was it, yes. . . .

Q. Who initiated that call, you or her?

---

[4] Without citation to applicable law, plaintiff argues that defendants accessed her report under false pretenses because they did not access it to "check for [a consumer] who [was] consolidating [her] bills," the purpose stated on defendants' membership application with Experian. *Pl.'s 56.1 Statement, Ex. H* (membership application). This argument is contrary to the law in this district. *See Allen*, 1992 WL 206285 at *2 ("[I]n order to maintain [a] false pretenses claim against [defendant], plaintiff must allege and establish that [defendant] obtained the consumer report for an 'impermissible purpose.'"). As long as defendants had a permissible purpose is accessing plaintiff' report, whether that purpose coincided with the one listed on its membership application with Experian is of no import.

5

> A. I believe I may have. Yeah, I may have. . . .
>
> Q. Do you remember when the call was?
> A. Do I remember? Only by reading the file. Yeah, I think it was April 2001. . . .
>
> Q. Why did you call her?
> A. Because we got this lawsuit that you had initiated. . . .
>
> Q. What was – other than the fact that you got the lawsuit papers, what was the purpose of your call?
> A. To find out what was – what she was talking about. I didn't know what her claim was about. That's all.
>
> Q. What did you say to her and what did she say to you in that call?
> A. . . . But I know she said something about her credit bureau file and if I could get a copy of it, and I did. . . .
>
> Q. Did you have any discussions during that conversation about obtaining her credit report?
> A. Yes, she asked me to get it. . . .

Based on the foregoing exchange, plaintiff concludes that "Mr. Hoffman's own testimony indicated that he did not think he had a permissible purpose to get the report until plaintiff asked him to do so." *Pl.'s Response to Def.'s Mot. for Summ. J.* at 4. Plaintiff further argues that "If, as defendants contend, plaintiff's filing a lawsuit in state court gave them a permissible purpose to pull the report, there would have been no need for Mr. Hoffman to telephone plaintiff, and only after she allegedly asked him to obtain her credit report, for him to get the report." *Id.* We cannot accept plaintiff's inferences on summary judgment. As stated *supra*, we must construe the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the non-moving party, in this instance, defendants. *See Pitasi*, 184 F.3d at 714.

After reviewing Hoffman's deposition and the remainder of the evidentiary

6

record, we cannot find any evidence conclusively stating defendants' purpose for accessing plaintiff's credit report. Hoffman was not asked his purpose in his deposition. Additionally, neither side provided us with interrogatory answers or any other evidence containing defendants' purpose for accessing the report. On summary judgment we cannot infer that defendants' purpose was to access plaintiff's credit report based on plaintiff's oral consent.

Because we cannot determine defendants' "real" purpose in accessing the credit report, we cannot analyze whether it was permissible under §1681b(a)(3)(F). See *Larason v. Logan Consumer Discount Co.*, 1991 WL 34308 at *2 (E.D.Pa. March 8, 1991) (In an FCRA case, the court cannot reach the issue of whether a purpose is permissible if there is "a genuine dispute on the factual question of whether defendants' proffered reason was their real reason for obtaining the report."); *see also Sawyer v. United States*, 831 F.2d 755, 760 (7th Cir. 1987) ("[B]ecause the evidentiary record was incomplete and genuine issues of material fact could exist . . . summary judgment is inappropriate.").

In an attempt to sidestep this factual dispute, plaintiff argues that defendants' averment that they accessed the report to aid in defending against plaintiff's State Case should be disregarded because defendants' failed to provide factual support for the statement. True, defendants should not make unsubstantiated factual averments in their submissions to the court. Local Rule 56.1 mandates that instead of speculating as to Hoffman's purpose, defendants should have submitted an affidavit from Hoffman stating his actual purpose for accessing Minter's credit report. However, this oversight

7

does not merit the remedy plaintiff seeks. Regardless of whether we consider defendants' purported purpose, to aid in preparing a defense to plaintiff's State Case, there is still a genuine issue as to a material fact in the evidentiary record before us. The record leaves open the question of defendants' "real" purpose. Defendants' "real" reason for accessing plaintiff's credit report is a question of fact, which we must leave for the jury to decide. On the record before us, a reasonable jury could find that defendants accessed the report (1) based on plaintiff's alleged oral consent, (2) to aid their defense of plaintiff's state claim, or (3) for some other reason. Because we cannot determine defendants' purpose in accessing the report, we cannot determine whether or not it was permissible as a matter of law, precluding summary judgment on Count I as to liability.

However, for completeness, we will address plaintiff's argument that even if defendants accessed her credit report to aid in defending against her State Case, that does not constitute a permissible purpose under §1681b(a)(3)(F), and, therefore, was a violation of the Act as a matter of law.[5] Specifically, Minter seeks a ruling that the defense of her State Case does not constitute "a legitimate business need for the information in connection with a business transaction that [was] initiated by [her]."

In determining whether a consumer report was obtained for a permissible purpose §1681b(a)(3)(F) should be broadly construed. *See Ippolito v. WNS*, 864 F.2d

---

[5]At one time, defendants may have contemplated arguing that they had a permissible purpose in accessing plaintiff's credit report pursuant to 15 U.S.C. §1681b(a)(2), which provides for the furnishing of a consumer report "[i]n accordance with the written instructions of the consumer to whom it related." However, both parties agree that plaintiff never provided AAACCC or Hoffman written consent to access her credit report on April 3, 2002, rendering §1681b(a)(2) inapplicable to the facts of this case.

8

440, 451 n.11 (7th Cir. 1988).⁶ This broad definition "allows consumer reports to be used for legitimate business purposes while preventing the use of consumer reports for improper purposes." *Id.* Preparation for litigation can qualify as a permissible purpose under the broad language of §1681b(a)(3)(F). See *Allen,* 1992 WL 206285 at *2 (N.D.Ill. Aug. 17, 1992) ("Preparation for litigation regarding a business debt qualifies as a permissible purpose under the broad language of [the subsection.]").

In *Allen*, the defendant law firm requested plaintiff's credit report in preparation for litigation regarding a business debt. *Id.* Specifically, defendant's client filed a countersuit against the plaintiff alleging nonpayment of a corporate account. *Id.* at *1. The court found that the obligations running between defendant's client and the plaintiff were "business transactions" and lawsuits based on them were "in connection" with those transactions. *Id.* at *2. The court also found that the collection of an allegedly unpaid account constituted "a legitimate business need" under the Act. *Id.* Therefore, the defendant law firm had a permissible purpose. *Id.* at 3. The court further noted that "[a] different result may have been reached if the report had been acquired in connection with litigation that did not involve liability for a commercial obligation deriving from a business transaction between the parties." *Id.* at 3, n. 4.

---

⁶*Ippolito* refers to §1681b(3)(E), the "business need exception," which stated that a consumer report could be furnished to a person who "otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer." §1681b was amended at least twice after *Ippolito.* See Intelligence Authorization Act for Fiscal Year 1998, Pub. L. No. 105-07, §311(a), 111 Stat. 2248, *2256 (1997); Consumer Credit Reform Act of 1996, Pub. L. No. 104-208, §2403, 110 Stat. 3009-430 (1996). Pursuant to the 1996 amendment, the "business need exception" was re-labeled §1681b(a)(3)(F) and is now limited to business transactions *initiated by* the consumer, as opposed to business transactions *involving* the consumer.

In *Spence*, the Sixth Circuit held that the defendant reporting agency did not violate the Act by providing a credit report to a party ("requestor") who requested it to aid in preparing a defense to a lawsuit, initiated by the subject of the credit report, alleging false reporting of a past-due debt. *Spence v. TRW, Inc.*, 92 F.3d 380, 383 (6th Cir. 1996). The court held that "the filing of the lawsuit obviously gave the [reporting agency] reason to believe that the [requestor] had a 'legitimate business need' for the report, such a need having arisen in connection with the preparation of [requestor's] defense to the lawsuit." *Id.* (citing *Ippolito*, 864 F.2d 440, 450-52).

The Sixth Circuit revisited the issue in *Duncan v. Handmaker*, noting that "[w]hile a lawsuit occasionally may give rise to a 'legitimate business need' for a consumer report, trial preparation generally does not fall within the scope of §1681b." 149 F.3d 424, 427 n.4 (6th Cir. 1998) (internal citations omitted). However, the court also recognized that litigation has been found to be a permissible purpose under the Act when the litigation relates to the collection of a debt. *Id.* "As the litigation moves outside the realm of debt collection, however, it is less likely – although not altogether impossible – that an attorney will obtain the report for a purpose that is within the purview of §1681b." *Id.* (citing *Spence*, 92 F.3d at 383).

In the instant case, AAACCC purportedly obtained Minter's credit report to aid in defending against her claim that they, *inter alia*, breached their contractual obligation to pay her creditors on a timely basis. It seems to us that under the broad interpretation of §1681b(a)(3)(F), and the relevant case law, defendants' proposed purpose would be permissible. The filing of the lawsuit against AAACCC provided a "legitimate business

need" for the credit report. See *Spence*, 92 F.3d at 383. Furthermore, the alleged contractual obligation of AAACCC to pay Minter's creditors on a timely basis is a "business transaction" that was "initiated by the consumer, [Minter]." The facts of our case appear to fit within the purview of §1681b. However, as stated *supra*, because defendants' "real" purpose for accessing the report is disputed and thus a question for the jury, we cannot reach the issue of whether or not their purpose was permissible as a matter of law.

*Damages*

Next, plaintiff seeks summary judgment on the issue of damages. Plaintiff is seeking actual, statutory and punitive damages for defendants' alleged negligent and/or willful noncompliance with the FCRA. §1681o governs damages for negligent noncompliance stating, "[a]ny person who is negligent in failing to comply with any requirements imposed under [the Act] with respect to any consumer is liable to that consumer" for actual damages and reasonable attorney's fees for a successful action to enforce liability.

As a matter of law, plaintiff cannot succeed on her negligent noncompliance damage claim because there is no evidence in the record to support her claim for actual damages. Plaintiff merely states that "[u]pon finding out that [AAACCC] had obtained her credit report without her permission, plaintiff felt angry, humiliated, frustrated and embarrassed." *Pl.'s 56.1 Statement, Ex. F* (Minter Aff. ¶4). "When an injured party provides the only evidence of any emotional distress or mental anguish, [she] must reasonably and sufficiently explain the circumstances of the injury, and not rely on mere

11

conclusory statement." *Quinn v. Experian Solutions*, 2004 WL 609357 at *5 (N.D.Ill. Mar. 24, 2004) (quoting *Field v. Trans Union L.L.C*, 2002 WL 849589 at *6 (N.D.Ill. May 3, 2002); *see also Schmit v. Trans Union L.L.C*, 2004 WL 785098 at *4 (N.D.Ill. Apr. 12, 2004) ("generalized claims of emotional injury are not enough to establish damages."). Minter has failed to sufficiently explain her emotional distress and thus cannot recover damages for defendants' alleged negligent noncompliance with the FCRA as a matter of law. *See Quinn*, 2004 WL 609357 at *5.

Plaintiff also seeks summary judgement on her damage claim for defendants' allegedly willful noncompliance with the FCRA. §1681n governs damages for willful noncompliance stating :

> Any person who willfully fails to comply with any requirement imposed under [the Act] with respect to any consumer is liable to that consumer [for] . . .
>
> (1) (A) . . . actual damages . . . of not less than $100 and not more than $1,000; or
>   (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
>
> (2) . . . punitive damages . . . ; and
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. §1681n.

As stated above, there is a genuine dispute as to defendants' purpose in obtaining plaintiff's credit report, precluding definitive findings as to the permissibility of the disputed purpose and whether the Act was violated. Plaintiff's failure to establish a

12

violation of the FCRA as a matter of law on summary judgment also precludes an award of statutory or punitive damages and reasonable attorney's fees at this stage in the litigation. See *Chester v. Purvis*, 2003 WL 22454885 at *3-4 (S.D.Ind. Oct. 22, 2003) (denying summary judgment as to damages because there was a question of fact as to whether defendant's actions were willful under the Act).

## Count II - Intrusion Upon Seclusion

Finally, plaintiff seeks summary judgment on her common law tort claim for intrusion upon seclusion (Count II). Initially, we note "it is unsettled whether the common law of Illinois recognizes such a claim" because the Illinois Supreme Court failed to recognize the tort in *Lovgren*." *Muick v. Glenayre Elecs.*, 280 F.3d 741, 743-44 (7th Cir. 2002) (citing *Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill.2d 411, 534 N.E.2d 987, 989 (Ill. 1989); *Johnson v. K Mart Corp.*, 311 Ill.App.3d 573, 723 N.E.2d 1192, 1195 (Ill. App. 2000). In *Muick*, the Seventh Circuit acknowledged that the tort was "generally recognized," but failed to address whether it thought the Illinois Supreme Court will recognize it. *Muick*, 280 F.3d at 743. For the purposes of this case, we need not address whether the Illinois Supreme Court will recognize the tort of intrusion upon seclusion because even if it exists, plaintiff has failed to provide sufficient facts to support each element of the tort. Count II must be dismissed.

To establish the tort of intrusion upon seclusion, plaintiff must plead and prove the following four elements: "(1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) an intrusion that is offensive to a reasonable person; (3) the matter upon which the intrusion occurs is private; and (4) the intrusion causes anguish and

13

suffering." *Mlynek v. Household Fin. Corp.*, 2000 WL 1310666, *3 (Sept. 13, 2000 N.D.Ill.) (citing *Johnson*, 311 Ill.App.3d at 577.). We begin by analyzing element four because it is dispositive of plaintiff's claim. Under Illinois law, to succeed on Count II, Minter must prove that the alleged intrusion "caused anguish and suffering." *Schmidt v. Ameritech Illinois*, 768 N.E.2d 303, 315 (Ill. App. Ct. 2002). To meet her burden, she "must prove actual injury in the form of, for example, medical care, an inability to sleep or work, or a loss of reputation and integrity in the community." *Id.* at 316. "Injury is not presumed." *Id.* Additionally, a causal relationship between plaintiff's anguish and defendant's alleged intrusion must be established. *Id.* at 317.

As discussed *supra*, Minter has failed to provide any evidence to support her alleged anguish and suffering. The extent of plaintiff's evidence is her own statement that she felt "angry, humiliated, frustrated and embarrassed." *Pl.'s 56.1 Statement, Ex. F* (Minter Aff. ¶4). This is insufficient as a matter of law. Moreover, plaintiff has failed to produce any evidence to support a causal relationship between her unproven anguish and defendants' alleged intrusion. Therefore, Count II is dismissed with prejudice.

**Conclusion**

For the reasons set forth above, plaintiff's motion for summary judgment is denied. There is a genuine issue of fact as to defendants' purpose in accessing plaintiff's credit report, precluding a finding on summary judgment as to liability in Count I. Plaintiff's claim for actual damages in Count I is denied. Count II is dismissed with prejudice. The parties are ordered to appear for a status hearing on August 19, 2004.

At that time, we will set a date for a settlement conference or a trial. The trial, if necessary, will be solely as to Count I and will address liability and, if applicable, statutory and punitive damages. It is so ordered.

**ENTER:**

*[signature]*

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: July *19* , 2004**